1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| UNITED STATES OF AMERICA, | Case No. 2:15-cr-00133-LRH-PAL |
|---|---|
| Plaintiff, | |
| v. | **REPORT OF FINDINGS AND RECOMENDATION** |
| JOSHUA STEPHEN DOTY, | |
| Defendant. | (Mot. Dismiss – Dkt. #18) |

This matter is before the Court on Defendant Joshua Steven Doty's Motion to Dismiss the Indictment and to Dismiss Count Two of the Indictment as Multiplicitous (Dkt. #18) (the "Motion"), which was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4 of the Local Rules of Practice.   The Court has considered the Motion, Response (Dkt. #25), and Reply (Dkt. #29).

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On May 6, 2015, the grand jury returned a two-count Indictment (Dkt. #1) against Mr. Doty for Prohibited Person in Possession of a Firearm, a violation of 18 U.S.C. §§ 922(g)(9), 924(a)(2).  Count one alleges Doty possessed a Rossi 12-gauge shotgun on February 7, 2015, and count two alleges he possessed the same firearm on April 23, 2015.  The Indictment alleges Mr. Doty was prohibited from possessing the firearm at the relevant times because he was convicted in Las Vegas Justice Court of a "misdemeanor crime of domestic violence," as defined by 18 U.S.C. § 921(a)(33)(A).  Specifically, it alleges Mr. Doty was convicted of "Battery Domestic Violence, in Case No. 13F00554X" on January 29, 2013.  The Motion is based on the following facts of the underlying case.

On January 11, 2013, the State of Nevada filed a Criminal Complaint against Mr. Doty alleging    he    committed    "BATTERY    CONSTITUTING    DOMESTIC    VIOLENCE    –

1

1    STRANGULATION (Category C Felony – NRS 200.481, 200.485, 33.018) and ASSAULT

2    WITH A DEADLY WEAPON (Category B Felony – NRS 200.471)." *See* Mot. to Dismiss

3    (Dkt. #18-1), Ex. A, Criminal Complaint.  The Complaint alleged that Mr. Doty and Priscilla

4    Ryan, the victim, had a domestic relationship and shared a child in common.  *Id.*

5         Pursuant to plea negotiations, defense counsel informed the court that Mr. Doty would be

6    "pleading guilty to battery domestic violence first offense."  *Id.* at Ex. B., Jan. 29, 2013 Tr. of

7    Battery Domestic Violence Plea at 3:12–13.  The court canvased Mr. Doty regarding the form

8    entitled "Battery Domestic Violence Admonishment of Rights."  *Id.* at 4:7–25.  Mr. Doty

9    affirmed that he understood the form and the consequences for a second or third conviction, had

10   no questions for the court, and he acknowledged his signature and the date at the bottom of the

11   form.  *Id.*  The first page of the form states, in part:

12
      I am the Defendant in this case. I am charged with battery constituting domestic
      violence in having willfully and unlawfully committed an act of force or violence
13    upon my spouse, former spouse, a person to whom I am related by blood or
      marriage, a person with whom I am or actually residing, a person with whom I
14    have had or am having a dating relationship, a person with whom I have a child in
      common, my minor child, or the minor child of one of those persons (in violation
15    of NRS 33.018/NRS 200.485). …

16    I AM ALSO AWARE THAT BY PLEADING GUILTY OR NOLO
      CONTENDERE I AM ADMITING THE STATE COULD FACTUALLY
17    PROVE THE CHARCE(S) AGAINST ME.  I AM ALSO AWARE THAT MY
      PLEA OF GUILTY OR NOLO CONTENDERE MAY HAVE THE
18    FOLLOWING CONSEQUENCES: …

19    3.    I understand that if I am convicted of a misdemeanor or felony that
      constitutes domestic violence pursuant to NRS 33.018 my possession, shipment,
20    transportation, or receipt of a firearm or ammunition may constitute a felony
      pursuant to NRS 202.360 or federal law.

21    4.    I understand that sentencing is entirely up to the court and the following
      range of penalties for committing the offense described above will apply (unless a
22    greater penalty is provided pursuant to NRS 200.481)

23   *Id.*, Ex. D, Battery/Domestic Violence: Admonishment of Rights at 1.  The second page of the

24   form details the minimum punishments for a first, second and third offense.  *Id.* at 2.  The form is

25   signed and initialed by Mr. Doty and his counsel and dated January 29, 2013.  *Id.*

26        After discussing the form, the court orally amended count one of the Complaint "to

27   reflect a battery constituting domestic violence first offense."  *Id.*, Ex. B, Plea Tr. at 5:4–6.  The

28   parties stipulated to "a factual basis and domestic relationship."  *Id.* at 5:9–12.  Based on the

2

1  stipulation, the court accepted Mr. Doty's no contest plea and adjudicated him guilty of count

2  one (the "Nevada conviction") and count two was dismissed. *Id*. at 5:13–15.

3      The Disposition Notice and Judgment indicates that Mr. Doty was charged in count one

4  of the Criminal Complaint with "DOM BATTERY BY STRANGULATION" under

5  NRS 200.485.2 and lists the disposition as: "GUILTY — BATTERY (DOMESTIC

6  VIOLENCE)." *Id*., Ex. C, Disposition Notice & Judgment, Case No. 13F00554X.  For count

7  two, the document indicates that Mr. Doty was charged in count two with "ASSAULT, W/DW"

8  under NRS 200.471 and lists the disposition as: "DISMISSED—DISMISSED ON COURTS

9  MOTION." *Id*.

10  **II.    MOTION TO DISMISS**

11      The Motion asserts that this Court should dismiss the Indictment because Mr. Doty's

12  state conviction for battery domestic violence is not a predicate misdemeanor offense under the

13  relevant federal statute, which provides:

14      It shall be unlawful for any person-- …

15      (9) who has been convicted in any court of a misdemeanor crime of domestic violence,

16      to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition

17      which has been shipped or transported in interstate or foreign commerce.

18  18 U.S.C. § 922(g).

19      Under federal law a "misdemeanor crime of domestic violence" is defined as:

20      … an offense that--

      (i) is a misdemeanor under Federal, State, or Tribal law; and

21      (ii) has, as an element, the use or attempted use of physical force, or the

22      threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child

23      in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse,

24      parent, or guardian of the victim. …

25  18 U.S.C. § 921(a)(33)(A).[1]

26  / / /

27  _____

28  [1] Subsection (a)(33)(B) provides certain limitations to this definition; however, none are applicable here, and Mr. Doty does not claim that any of the exceptions apply.

3

1    Mr. Doty does not dispute that the Nevada conviction was a misdemeanor offense under

2    state law or that he had the requisite domestic relationship with the victim, Ms. Ryan.  The

3    Motion asserts that the Nevada statute of conviction is categorically overbroad and does not

4    qualify as a crime of domestic violence under federal law because the crime he was convicted of

5    does not require the element of "use or attempted use of physical force."   Mr. Doty argues that

6    he was convicted of a misdemeanor under NRS 33.018, which can be violated in numerous

7    ways, some of which only require reckless conduct.  The Supreme Court has held that reckless

8    conduct causing bodily injury is insufficient to establish the use or attempted use of force as a

9    matter of law.  Thus, the Motion asserts that the Nevada statute under which he was convicted is

10   categorically overbroad and cannot serve as a predicate "misdemeanor crime of domestic

11   violence" that allows him to be charged under § 922(g).

12                  **A.      Legal Standard for Reviewing Predicate Crimes Under State Law**

13       To determine whether a state conviction qualifies under a particular federal statute as a

14   predicate offense, the court applies the holding of *Descamps v. United States*, --- U.S. ----, 133

15   S.Ct. 2276 (2013).  *See Almanza-Arenas v. Lynch*, 809 F.3d 515, 521 (9th Cir. 2015).

16          At the first step, we compare the elements of the state offense to the elements of
            the generic offense defined by federal law.  If this "categorical approach" reveals
17          that the elements of the state crime are the same as or narrower than the elements
            of the federal offense, then the state crime is a categorical match and every
18          conviction under that statute qualifies as [a predicate offense].  When a statute is
            "overbroad," meaning that it criminalizes conduct that goes beyond the elements
19          of the federal offense, we turn to step two: determining whether the statute is
            "divisible" or "indivisible."  If the statute is indivisible, "our inquiry ends,
20          because a conviction under an indivisible, overbroad statute can never serve as a
            predicate offense."  Only when a statute is overbroad and divisible do we turn to
21          step three—the "modified categorical approach."

22   *Id.* at 521 (quoting *Lopez–Valencia v. Lynch*, 798 F.3d 863, 867–68 (9th Cir. 2015) (internal

23   citations omitted).

24                  **B.      Comparing Elements of the State Offense to the Elements of the Federal
                             Generic Offense**
25

26       To determine whether a state criminal statute is categorically a crime involving the same

27   elements as the generic offense defined by federal law, the court must: (i) "identify the elements

28   of the statute necessary to secure a conviction," *Uppal v. Holder*, 605 F.3d 712, 714 (9th Cir.

4

1    2010), and (ii) compare the elements of the statute of conviction to the generic federal definition

2    of the subject crime and decide whether the conviction meets that definition. *Almanza-Arenas*,

3    809 F.3d at 521. A prior conviction under a state statute can only serve as a categorical match

4    under a federal statute if the state statute "has the same elements as, or is narrower than," the

5    federal generic crime. *Rendon v. Holder*, 764 F.3d 1077, 1082–83 (9th Cir. 2014). However, if

6    the state "statute sweeps more broadly than the generic crime, a conviction under that law cannot

7    count as [the federal] predicate, even if the defendant actually committed the offense in its

8    generic form." *Id.* When comparing a prior conviction and a federal generic crime, the

9    "categorical approach" requires courts to "look only to the statutory definitions—*i.e.*, the

10   elements—of a defendant's prior offenses, and *not* to the particular facts underlying those

11   convictions." *Id.* (quoting *Descamps*, 133 S. Ct. at 2283) (internal quotation omitted).

### 1.    Identifying Mr. Doty's Statute of Conviction

13        The Motion asserts that Doty was convicted of battery domestic violence under

14   NRS 33.018.[2] However, the state criminal complaint charged him in count one with "battery

---

[2] NRS 33.018 provides, in relevant part:

   1. Domestic violence occurs when a person commits one of the following acts against or upon the person's spouse or former spouse, any other person to whom the person is related by blood or marriage, any other person with whom the person is or was actually residing, any other person with whom the person has had or is having a dating relationship, any other person with whom the person has a child in common, the minor child of any of those persons, the person's minor child or any other person who has been appointed the custodian or legal guardian for the person's minor child:
       (a) A battery.
       (b) An assault.
       (c) Compelling the other person by force or threat of force to perform an act from which the other person has the right to refrain or to refrain from an act which the other person has the right to perform.
       (d) A sexual assault.
       (e) A knowing, purposeful or reckless course of conduct intended to harass the other person. Such conduct may include, but is not limited to:
           (1) Stalking.
           (2) Arson.
           (3) Trespassing.
           (4) Larceny.
           (5) Destruction of private property.
           (6) Carrying a concealed weapon without a permit.
           (7) Injuring or killing an animal.
       (f) A false imprisonment.
       (g) Unlawful entry of the other person's residence, or forcible entry against the other person's will if there is a reasonably foreseeable risk of harm to the other person …

1    constituting domestic violence – strangulation" under NRS 200.481, 200.485, 33.018. *See* Mot.

2    to Dismiss (Dkt. #18-1), Ex. A.  The parties negotiated the charge and the court orally amended

3    count one "to reflect a battery constituting domestic violence first offense;" thus, the statutory

4    enhancement for strangulation was dropped. *Id*., Ex. B, Plea Tr. at 5:4–6.  The Motion claims

5    that Doty was not convicted of an offense under NRS 200.481 and 200.485 but an offense under

6    NRS 33.018.

7         However, Chapter 33 of the Nevada Revised Statutes is a part of Title 3 that addresses

8    remedies in special actions and proceedings.  Chapter 33 contains the provisions governing

9    injunctions.  NRS 33.018 is part of Nevada's statutory scheme authorizing orders for protection

10   against domestic violence.  It is not a criminal statue.  Rather, it defines acts which constitute

11   battery domestic violence for purposes of obtaining orders for protection against domestic

12   violence.

13        NRS 200.481 and 200.48 are the criminal statutes that define and punish battery domestic

14   violence.  Both statutes fall within Title 15 of the Nevada Revised Statutes entitled "Crimes and

15   Punishment."  Chapter 200 sets forth crimes "Crimes Against the Person."  NRS 200.485 is titled

16   "Battery which constitutes domestic violence: Penalties; referring child for counseling;

17   restriction against dismissal, probation and suspension; definitions."  The Justice Court Notice of

18   Disposition and Judgement, which is attached as Exhibit C to the Motion, reflects that Doty was

19   convicted of a violation of NRS 200.485.2 which incorporates NRS 200.481's definition of

20   "Battery." *See* NRS 200.485(9).  Under NRS 200.481(a)(1), "Battery" is defined as "any willful

21   and unlawful use of force or violence upon the person of another."   NRS 33.018 defines

22   domestic violence for purposes of the civil remedies afforded under Chapter 33, and describes

23   the domestic relationships which qualify.  Its reference in NRS 200.485 is to establish the

24   "domestic" element of the offense.  Domestic violence offense occurs when an individual

25   commits one of the proscribed acts against or upon another person with whom the individual has

26   an intimate or familial relationship. *See* NRS 33.018(1).[3]  NRS 33.018 does not criminalize any

27   _____

28   [3]  Nevada law addresses domestic violence in both the civil and criminal context.  For example,
     NRS 33.017 through 33.100, which encompasses NRS 33.018, provides the procedure for granting

1   conduct.  It defines the *domestic relationships* that qualify for civil remedies for victims of

2   domestic violence, and prosecution for criminal domestic violence offenses.

3          In *English v. State*, 9 P.3d 60 (Nev. 2000), the Nevada Supreme Court discussed the

4   interplay between the three relevant statutes—NRS 200.481, 200.485, and 33.018.  The court

5   noted that the Nevada legislature passed a "domestic violence enhancement law" in 1997 now

6   codified at NRS 200.485.  *Id.* at 61.  This statute increased "the severity of the offense and

7   consequent penalty for battery constituting domestic violence from a misdemeanor to a felony

8   when the defendant has two prior convictions for the same offense within the immediately

9   preceding seven years."  *Id.*  The court noted that "the legislature did not create a new crime by

10  the passage of this statute," it simply moved the "definition and penalties for battery constituting

11  domestic violence" to NRS 200.485.  *Id.* at 64.  "Prior to the passage of the new law, a battery

12  that constituted domestic violence pursuant to NRS 33.018, was treated as a simple battery and

13  prosecuted under NRS 200.481."  *Id.* at 66; *see also Clay v. Eighth Jud. Dist. Ct.*, 305 P.3d 898,

14  906 (Nev. 2013) (citing both NRS 200.481 and NRS 33.018 for "a charge of domestic battery");

15  *Hobbs v. State*, 251 P.3d 177, 179 (Nev. 2011) (noting that NRS 200.485 is "Nevada's domestic

16  battery statute"); *City of Las Vegas v. Eighth Jud. Dist. Ct.*, 188 P.3d 55, 57–59 (Nev. 2008)

17  (describing NRS 33.018 as a "domestic violence sentencing enhancement" with the purpose of

18  "comprehensively combat domestic violence and reduce recidivism").[4]

19         The Motion is simply wrong in arguing that NRS 200.485 is only a sentencing statute

20  because it "does not criminalize any conduct."  *See* Reply (Dkt. #29) at 5:3–6.  NRS 200.485 is a

21  _____

22  injunctive orders for protection against domestic violence.  A family court may utilize evidence of
    domestic violence to determine that custody of a child by a "perpetrator of domestic violence is not in the
    best interest of the child."  *See* NRS 125C.230 (citing NRS 33.018); NRS 49.2542 (" 'Domestic violence'
23  means an act described in NRS 33.018.").  NRS 41.134 establishes a private right of action for victims of
    domestic violence.  NRS 118A.345 allows tenants who are the victims of domestic violence to terminate a
24  residential lease due to domestic violence.  The multiple citations to NRS 33.018 in both civil and
    criminal Nevada statutes negate Mr. Doty's assertion that NRS 33.018 is his criminal statute of
25  conviction.

26  [4]  *See also Williams v. State*, Case No. 65761, 2015 WL 4712111, at \*2 (Nev. App. July 31, 2015)
    (unpublished order affirming jury verdict as to sufficiency of evidence for domestic battery).  The
27  *Williams* court noted that "[b]attery is 'any willful and unlawful use of force or violence upon' another
    person.  NRS 200.481(l)(a).  A battery constitutes domestic violence if it is committed against a 'person
28  with whom the person is or was actually residing.'  NRS 33.018(1)."

1    part of Chapter 200 which contains Nevada's criminal statutes for crimes against persons.

2    Subsection (9)(b) incorporates the definition of battery in NRS 200.481(1)(a), which criminalizes

3    battery.    NRS 200.485(9)(c) also incorporates NRS 33.018 by reference.    NRS 33.018 by

4    contrast is not a criminal statute—it merely lists the types of intimate relationships required to

5    show a domestic relationship for purposes of the definition of domestic violence.    Acts of

6    domestic violence include battery among others.    The legislative definition of domestic

7    relationships in NRS 33.018 is used in both civil and criminal contexts.    *See*, *supra*, Footnote 3.

8    In the context of a criminal case, a domestic relationship that meets the definition under

9    NRS 33.018 changes a simple battery under NRS 200.481 to a domestic battery under

10   NRS 200.485.    *See English*, 9 P.3d at 64–66.    NRS 33.018 provides the basis for the additional

11   penalties set forth in NRS 200.485 for a battery constituting domestic violence.    If a battery is

12   committed upon a domestic partner as defined by NRS 33.018, NRS 200.485 provides for a

13   sentencing enhancement.    *Cf. United States v. Hayes*, 555 U.S. 415, 418 (2009) (the existence of

14   a domestic relationship "need not be a defining element of the predicate offense," but it must be

15   established beyond a reasonable doubt); *Hobbs v. State*, 251 P.3d 177, 181 (Nev. 2011) (due

16   process requires the prosecution to prove "each element of a sentence enhancement beyond a

17   reasonable doubt").    Doty was convicted of battery domestic violence under NRS 200.485.

18                              **2.        The Elements of the Statute of Conviction**

19           To determine whether Doty's state conviction under NRS 200.485 qualifies as a federal

20   misdemeanor crime of domestic violence for purposes of charging Doty with prohibited person

21   in possession of a firearm, the Court must identify the elements of a Nevada statute of

22   conviction, and apply Nevada rules of construction.    *See*, *e.g.*, *Almanza-Arenas*, 809 F.3d at 521

23   (applying California rules of statutory construction to a California criminal statute).    The court's

24   objective in construing Nevada statutes is to give effect to the legislature's intent.    *Chateau*

25   *Vegas Wine*, *Inc. v. S. Wine & Spirits of Am.*, *Inc.*, 265 P.3d 680, 685 (Nev. 2011).    To determine

26   legislative intent, the court looks at the plain language of a statute.    *Great Basin Water Network*

27   *v. State Eng'r*, 234 P.3d 912, 918 (Nev. 2010).    The court only looks beyond the plain language

28   if it is ambiguous or silent on the issue in question.    *Allstate Ins. Co. v. Fackett*, 206 P.3d 572,

1    576 (Nev. 2009). In such situations, legislative intent may be ascertained by reference to the

2    entire statutory scheme to avoid an unreasonable or absurd result. *Salas v. Allstate Rent-A-Car*,

3    *Inc.*, 14 P.3d 511, 513–14 (Nev. 2000). The court has a duty to construe statutes as a whole so

4    that all provisions are considered together and, to the extent possible, reconciled and harmonized.

5    *Cromer v. Wilson*, 225 P.3d 788, 790 (Nev. 2010).

6           Applying these rules to NRS 200.485, a battery constituting domestic violence requires a

7    (1) willful or unlawful use of force or violence (2) upon a person with a special relationship to

8    the criminal defendant. *See English*, 9 P.3d at 66–67 (noting that after the passage of

9    NRS 200.485 "an added *element* must now be proven to convict a person under the 'battery that

10   constitutes domestic violence' crime, *i.e.*, the victim must be one of the designated persons

11   protected under NRS 33.018") (emphasis added).

12

13      **3.      Comparing the Elements of the Nevada Conviction with 18 U.S.C.
        § 921(a)(33)(A)'s Definition of "misdemeanor crime of domestic
14      violence"**

15          Applying the categorical approach, courts compare "the elements of the statute of

16   conviction with a federal definition of the crime to determine whether conduct proscribed by the

17   statute is broader than the generic federal definition." *United States v. Quintero-Junco*, 754 F.3d

18   746, 751 (9th Cir. 2014) (quotation omitted). The Ninth Circuit considers "not only the language

19   of the state statute, but also the interpretation of that language in judicial opinions." *United*

20   *States v. Gonzalez-Monterroso*, 745 F.3d 1237, 1244 n.4 (9th Cir. 2014) (quotation omitted); *see*

21   *also Almanza-Arenas*, 809 F.3d at 525–26. If the state statute criminalizes more conduct than the

22   federal generic offense, then the statutes are not a "categorical match." *United States v.*

23   *Hernandez*, 769 F.3d 1059, 1063 (9th Cir. 2014).

24          The federal definition of a "misdemeanor crime of domestic violence" is an offense that

25   (i) "has, as an element, the use or attempted use of physical force, or the threatened use of a

26   deadly weapon" (ii) by a defendant who had a domestic relationship with the victim. *See* 18

27   U.S.C. § 921(a)(33)(A). Doty does not dispute that he was convicted of a Nevada misdemeanor

28   offense or that he had the requisite domestic relationship with Ms. Ryan. Rather, the Motion

9

1   claims that NRS 33.018 includes a definition of domestic violence that does not require "use or

2   attempted use of physical force."  However, as explained, NRS 38.018 is not a criminal statute.

3   It provides civil remedies for domestic violence victims, including injunctions and protective

4   orders where the offender's conduct does not necessarily involve the use or attempted use of

5   force.  It also defines what relationships are "domestic" for both civil and criminal purposes.

6          NRS 200.481(a)(1) defines battery as the "willful and unlawful *use of force or violence*

7   upon the person of another."  (emphasis added).  In *United States v. Castleman*, --- U.S. ----, 134

8   S.Ct. 1405, 1410 (2014), the Supreme Court held that a prior conviction for a misdemeanor

9   crime of domestic violence met the physical force requirement of § 922(g) if the degree of force

10  used supports a common law battery, namely—offensive touching.  *See also Hobbs*, 251 P.3d at

11  179 (any harmful or offensive touching, however slight, constitutes sufficient force or violence

12  to sustain a domestic battery conviction under NRS 200.481 and 200.485).  Doty's conviction

13  under NRS 200.485 necessarily had as an element the use or attempted use of physical force and

14  qualifies as a misdemeanor crime of violence under federal law.

15         Additionally, relying on *Castleman*, a California Court of Appeal has found that

16  California's battery statute, Penal Code Section 242, is a misdemeanor crime of domestic

17  violence within the meaning of § 921(a)(33)(A)(ii).  *See James v. State*, 229 Cal. App. 4th 130,

18  136, 176 Cal. Rptr. 3d 806, 810 (2014), *review denied* (Nov. 19, 2014).  Nevada's battery statute

19  is based on the California's battery statute.  *Byars v. State*, 336 P.3d 939, 949 (Nev. 2014).  Like

20  its California counterpart, the Nevada statute is sufficient to serve as a predicate misdemeanor

21  crime of domestic violence.  Because Nevada's domestic battery statute is a categorical match to

22  § 921(a)(33)(A)(ii), every conviction under NRS 200.485 qualifies as a predicate offense.  The

23  Court will therefore recommend that the district judge deny the Motion on this ground.

24         **C.     Doty's Multiplicitous Argument**

25        "An indictment is multiplicitous when it charges multiple counts for a single offense,

26  thereby resulting in two penalties for one crime and raising double jeopardy concerns."  *United*

27  *States v Mancuso*, 718 F.3d 780, 791 (9th Cir. 2013) (citations omitted).  The Fifth Amendment

28  provides that no person shall "be subject for the same offence to be twice put in jeopardy of life

1    or limb." U.S. Const. Amend. V.  Thus, the Double Jeopardy Clause protects against "multiple

2    punishments for the same offense." *Whalen v. United States*, 445 U.S. 684, 688 (1980); *United*

3    *States v. Davenport*, 519 F.3d 940, 943 (9th Cir. 2008).  However, when "there has been no prior

4    conviction or acquittal, the Double Jeopardy Clause does not protect against simultaneous

5    prosecutions for the same offense, so long as no more than one punishment is eventually

6    imposed'." *United States v. King*, 713 F. Supp. 2d 1207, 1218 (D. Haw. 2010) (quoting *United*

7    *States v. Josephberg*, 459 F.3d 350, 355 (2d Cir. 2006)); *see also Ohio v. Johnson*, 467 U.S. 493,

8    500 (1984) ("While the Double Jeopardy Clause may protect a defendant against cumulative

9    punishments for convictions on the same offense, the Clause does not prohibit the State from

10   prosecuting respondent for such multiple offenses in a single prosecution.").

11       Mr. Doty asks that the Court dismiss Count Two of the Indictment as multiplicitous

12   because "the government created two offenses out of the same course of conduct by charging

13   Mr. Doty with possessing the same firearm on two different dates."[5]  *See* Reply (Dkt. #29) at

14   10:15–16.  Courts have recognized that a multiplicitous indictment may prejudice a jury against

15   the defendant by creating the impression of more criminal activity on his part than may have

16   been present.  Doty argues the Court has the discretion and therefore should dismiss Count Two

17   as multiplicitous.

18       "A court may redress multiplicity in an indictment by dismissal of multiplicitous counts

19   or entry of an order directing the government to elect under which counts it will proceed so long

20   as there is no improper amendment to the indictment." *King*, 713 F. Supp. 2d at 1218 (citing

21   *United States v. Aguilar*, 756 F.2d 1418, 1423 (9th Cir. 1985)); *see also United States v.*

22   *Johnson*, 130 F.3d 1420, 1426 (10th Cir. 1997) ("A decision of whether to require the

23   prosecution to elect between multiplicitous counts before trial is within the discretion of the trial

24   court.")).  "A court may also choose to have all counts proceed to trial and vacate one of the

25

26   _____

[5] Ninth Circuit case law holds that possession of the same firearm on different dates is only one offense

27   because it constitutes "one uninterrupted course of conduct." *See, e.g.*, *United States v. Horodner*, 993
     F.2d 191, 193 (9th Cir. 1993); *see also United States v. Ruiz*, 710 F.3d 1077, 1081 (9th Cir. 2013)

28   (firearm possession "is presumed continuous absent specific evidence that the defendant lost possession at
     some point").

1    multiplicitous convictions prior to sentencing."   *Id.* (citing *United States v. Hector*, 577 F.3d

2    1099, 1101–1103 (9th Cir. 2009)).

3         Here, the government acknowledges that Count Two is multiplicitous but argues that the

4    Motion is premature because the government is allowed to charge a person for possessing the

5    same firearm on different dates, although the defendant may not be punished twice for the same

6    conduct.   The government states it will move to dismiss one of the counts and proceed with

7    sentencing on the other, and therefore no double jeopardy violation will occur.   If the court

8    decides the Indictment is multiplicitous before trial, the Court should "merge" the two counts

9    rather than dismiss Count Two of the Indictment.

10        Mr. Doty argues that the multiplicitous indictment will prejudice his trial rights.   He

11   contends that the government's refusal to dismiss the multiplicitous charge only serves to gain an

12   advantage at trial because a jury may get the impression that Mr. Doty has committed multiple

13   crimes.   *See* Reply (Dkt. #29) at 11 (citing *Johnson*, 130 F.3d at 1426 ("The risk of a trial court

14   not requiring pretrial election is that it may falsely suggest to a jury that a defendant has

15   committed not one but several crimes.") (internal quotation and citation omitted); *United States*

16   *v. Marquardt*, 786 F.2d 771, 778 (7th Cir. 1986) ( stating courts have found that a multiplicitous,

17   indictment may prejudice the jury against the defendant by creating the impression of more

18   criminal activity on his part than in fact may have been present).

19        The Indictment is clearly multiplicitous in charging Doty with possession of the same

20   firearm on two different dates.   The government states, and Doty does not dispute, that Count

21   One involves an allegation Doty was found shooting the shotgun in the desert, and Count Two

22   involves possession of the same shotgun found during execution of a search warrant for his

23   residence.   The criminal conduct charged in both counts is mere possession.   Nothing is the

24   Indictment suggests Doty was engaged in any other type of criminal activity that would run the

25   risk of creating the impression he engaged in more than one crime.   The defense may request an

26   appropriate jury instruction clarifying that the Indictment charges one offense occurred on two

27   separate dates.   Dismissing one of the counts prior to sentencing will cure multiplicity of the

28   Indictment.   *See United States v Matthews*, 240 F.3d 806, 818 (9th Cir. 2000), *overruled in part*,

1   *adopted in part on reh'g en banc*, 278 F.3d 880 (9th Cir. 2002).   The Court will therefore

2   recommend denying Mr. Doty's Motion as to Count Two.

3            For the reasons explained,

4            **IT IS RECOMMENDED** that Defendant Joshua Steven Doty's Motion to Dismiss the

5   Indictment and to Dismiss Count Two of the Indictment as Multiplicitous (Dkt. #18) BE

6   DENIED.

7            Dated this 1st day of March, 2016.

8

9                                                                    PEGGY A. LEEN
                                                                     UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28